## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| **SHAWN WESTFAHL,** | |
| Plaintiff, | |
| v. | Case No. 1:11-cv-02210 (CRC) |
| **DISTRICT OF COLUMBIA, <u>et al.</u>,** | |
| Defendants. | |

## <u>MEMORANDUM OPINION</u>

Officers of the District of Columbia Metropolitan Police Department ("MPD") arrested Plaintiff Shawn Westfahl during a protest march against the World Bank and charged him with assaulting a police officer. According to the police, Westfahl struck Officer Robert Robinson with a protest flag and resisted several officers' efforts to subdue and handcuff him. Westfahl maintains he dropped the flag and tried to comply with the officers' instructions. An amateur video of the incident, while blurry, appears to show that the flagpole never struck any officer. Westfahl has sued the officers for alleged violations of his constitutional rights pursuant to 42 U.S.C. § 1983 and related common law torts. He also asserts that the District is liable for its officers' conduct because it deliberately failed to implement systems to investigate and discipline excessive force incidents. Westfahl further alleges that MPD violated his Fifth Amendment rights by denying him use of his asthma inhaler while in jail. The defendant officers and the District have moved for summary judgment on all of Westfahl's claims and Westfahl has cross-moved for partial summary judgment on his Fourth Amendment and assault and battery claims. Because genuine questions of fact exist regarding the reasonableness of some of the officers' conduct, the Court will deny both parties' motions as to Westfahl's Fourth and First Amendment, assault and battery, false arrest, and defamation claims against certain individual defendants. The Court will grant summary judgment

to the District on Westfahl's municipal liability claim, however, because he has not offered sufficient evidence to support an inference that the District was deliberately indifferent to a likelihood of constitutional violations by MPD officers or that any city policy caused his injuries. And, because the Defendants have articulated a reasonable basis for MPD's policy of withholding an arrestee's medical device, the Court also will grant summary judgment for the Defendants on Westfahl's Fifth Amendment claim.

## I.     Background

Shawn Westfahl participated in a protest march against the World Bank and International Monetary Fund in Washington, D.C. on October 9, 2010.  Defs. Statement of Material Facts ("DSOF") ¶ 1.  As he marched, Westfahl held a long wooden pole attached to a protest flag.  Id. ¶ 8. Some of the protesters were disorderly: they walked in the street against traffic, threw newspaper dispensers and traffic barricades, and banged on cars.  Id. ¶¶ 2–4.  At L and 21st Streets, Northwest, Metropolitan Police Department ("MPD") officers cordoned the protesters, herding them onto the sidewalk along the wall of an office building.  Id. ¶ 6.  The officers included members of a bicycle squad.  Deposition of Raul Figueras ("Figueras Depo.") 28:15–22.  According to several of the officers, and as depicted in a video taken by a participant in the protest, most of the protesters complied with the officers' instructions to move against the wall.  Westfahl, however, attempted to walk past the line of officers.  Deposition of Officer Robert Andrew Robinson ("Robinson Depo.") 31:1–2; Deposition of Officer Daniel Thau ("Thau Depo.") 51:6–8; Defs. Mem. in Supp. of Mot. for Summ. J. ("Defs. Mem.") Ex. 12 ("Video") 3:06–16.

After the officers stopped the protesters, the parties' versions of events diverge sharply. According to the officers involved in the incident, Westfahl hit Officer Robert Robinson's bicycle helmet with the flagpole.  Robinson Depo. 55:11–59:3; Deposition of Officer Todd Cory ("Cory Depo.") 29:18–20; Thau Depo. 56:3–17; Deposition of Sergeant Craig Mack ("Mack Depo.") 56:2–

20.  Some of the officers testified that Westfahl brought the flag down on Officer Robinson's head, while others recounted that he brought it around to strike with the butt of the stick.  Compare Robinson Depo. 55:11–59:3; with Mack Depo. 56:2–20.  The officers' testimony also differs on whether the strike left a mark on Officer Robinson's helmet, compare Robinson Depo. 55:11–59:3; with Thau Depo. 56:3–17.  Westfahl, on the other hand, testified that he dropped the flag after Officer Robinson pushed him back towards the wall.  Deposition of Shawn Westfahl ("Westfahl Depo.") 49:18–50:14, 54:1–55:8.  The video, while blurry and granular, appears to show Westfahl's flag falling down and away from the police line, well away from any officer.  Video 3:06–3:17. After Westfahl released the flagpole, Officer Robinson wrestled Westfahl to the ground and attempted to handcuff him.  According to the officers, Westfahl refused to present his arm so that he could be handcuffed, causing the officers to strike Westfahl with a baton and their fists in an effort to compel compliance.  Robinson Depo. 55:16–17, 60:6–12, 71:22–72:13; Thau Depo. 58:6–12, 66:1–3; Cory Depo. 33:3–22.  Westfahl contends he was not resisting handcuffing and that his arm was pinned underneath him by the weight of the officers.  Westfahl Depo. at 58:14–59:12, 106:20–107:5.  The video again is unclear but could be interpreted to show Westfahl's arm pinned and slack while the officers strike him.  Video at 3:28–3:45.[1]

---

[1]  Westfahl provided two sworn statements by third-parties claiming to have seen the arrest.  Pl. Opp'n to Defs. Mot. for Summ. J. ("Pl. Opp'n") Ex. N, O.  The District argues that these affidavits are infirm because they do not specify that they are made "under penalty of perjury," as required by 28 U.S.C. § 1746.  The Court need not address this issue because the statements are merely consistent with Westfahl's other record evidence and add no further detail.

Westfahl also submitted an annotated version of the video that slows down the frame-rate and includes descriptions of events and names of individuals depicted, which the government moves to strike as "'testimony' of Plaintiff's counsel about the content of the video."  Mem in Supp. of Mot. to Strike at 4.  The Court agrees with Westfahl, however, that the annotated video is admissible as a demonstrative exhibit.  See, e.g., Ex rel. K & R. Ltd. v. Mass. Hous. Fin. Agency, 456 F. Supp. 46, 53 (D.D.C. 2006), aff'd, 530 F.3d 980 (D.C. Cir. 2008).

After the officers finally placed Westfahl in handcuffs, the parties' versions of events converge once more.  Westfahl was arrested and charged with assaulting a police officer.  DSOF ¶ 27.  Westfahl was taken to a hospital to treat minor abrasions that he had sustained during the scuffle and arrest.  See Pl. Ex. P (Plaintiff's responses to interrogatories).  Officers then transported Westfahl to a police station and placed all of his personal property, including his asthma inhaler, in the station's evidence locker.  DSOF ¶ 35.  MPD policy at the time required the police to take all medical devices away from arrestees and to transport an arrestee to a nearby hospital if he requested use of the device.  Id. ¶¶ 33–34.  The next morning, while still in custody, Westfahl had an asthma attack and requested his inhaler.  Id. ¶ 36.  Following policy, MPD officers transported Westfahl to a nearby hospital where he received appropriate treatment.  Westfahl suffered no long-term effects from this asthma attack.  Id. ¶¶ 37–38.

Westfahl brought suit against the District and the bicycle squad officers who were personally involved in his arrest.  Specifically, Westfahl has sued Officer Robinson, who allegedly wrestled Westfahl to the ground and struck him; Officer Todd Cory, who was the charging officer and allegedly struck Westfahl; Office Daniel Thau, who allegedly struck Westfahl with his baton; and Sergeant Craig Mack, who supervised the other officers and allegedly participated in Westfahl's arrest.  Pl. Opp'n at 5–6.

## II.     Standard of Review

Summary judgment is appropriate "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(a).  The moving party must identify "those portions of the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, which it believes demonstrate the absence of a genuine issue of material fact."  Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986) (quotation marks omitted).  To defeat summary judgment, the nonmoving party

must demonstrate that there is a genuine issue of material fact.  Id. at 324.  A dispute is "genuine" if

a reasonable fact-finder could find for the nonmoving party and is "material" if it is capable of

affecting the outcome of the litigation.  Anderson v. Liberty Lobby, 477 U.S. 242, 248 (1986).  In

assessing a party's motion, the court must "view the facts and draw reasonable inferences 'in the

light most favorable to the party opposing the summary judgment motion.'"  Scott v. Harris, 550

U.S. 372, 378 (2007) (alterations omitted) (quoting United States v. Diebold, Inc., 369 U.S. 654,

655 (1962) (per curiam)).

**III.    Analysis**

    A.  Claims Against Individual Officers

Westfahl brings the following claims against individual police officers: First and Fourth

Amendment violations and assault and battery against Officers Robinson, Cory, and Thau, and

Sergeant Mack; false arrest against Officer Cory, who arrested Westfahl at the scene; abuse of

process against all the officers except Officer Thau; and defamation against Officers Cory and

Robinson.[2]  The Defendants assert a qualified immunity defense as to all claims against the

individual officers.  As to Westfahl's state law tort claims against the individual officers, Westfahl

may hold the District liable for their actions under a respondeat superior theory.  Armbruster v.

Frost, 962 F. Supp. 2d 105, 116 (D.D.C. 2013) (citing District of Columbia v. White, 442 A.2d 159,

162 n.7 (D.C. 1982)).  The Court will address each claim and defense in turn.

    i.  Fourth Amendment, Assault and Battery, and Qualified Immunity

In Counts II and VI, Westfahl brings Fourth Amendment and common law assault and

battery claims against the individual officers.  A police officer's unreasonable use of force

---

[2]  Westfahl has withdrawn additional claims for intentional infliction of emotional distress and
negligence, Pl. Opp'n at 50, as well as claims for defamation against Sergeant Mack and Officer
Thau and abuse of process against Officer Thau.  Id. at nn. 2–3.  Accordingly, the Court will grant
the government's motion for summary judgment with respect to these claims.

constitutes a Fourth Amendment violation as well as an assault and battery under D.C. law.

Hundley v. District of Columbia, 494 F.3d 1097, 1101 (D.C. Cir. 2007) (citing District of Columbia

v. Jackson, 810 A.2d 388, 392 (D.C. 2002)).  Whether use of force by an officer is reasonable "must

be judged from the perspective of a reasonable officer on the scene, rather than with the 20/20

vision of hindsight."  Graham v. Connor, 490 U.S. 386, 396 (1989) (citing Terry v. Ohio, 392 U.S.

1, 20–22 (1968)).  The court considers "the facts and circumstances of [the] particular case,

including the severity of the crime at issue, whether the suspect pose[d] an immediate threat to the

safety of the officers or others, and whether he [wa]s actively resisting arrest or attempting to evade

arrest by flight."  Id. at 396.  Qualified immunity protects officers from liability if they act based on

a reasonable mistake of fact or law.  Saucier v. Katz, 533 U.S. 194, 205–206 (2001).

The District contends that the officers were justified in forcibly detaining and arresting

Westfahl because they reasonably believed he hit Officer Robinson with the flagpole.  The officers'

belief was reasonable, according to the District, because it at least appeared to them as though the

flag struck Officer Robinson, whether it actually did or not.  But Westfahl testified that the flag fell

away from the officers, and the video could be seen to corroborate his story.  Westfahl Depo. 54:4–

55:8; Video 3:06–17.  This conflicting evidence creates a genuine question of fact as to whether

Officer Robinson was justified in wrestling Westfahl to the ground and whether Officer Cory was

justified in arresting Westfahl for assaulting Officer Robinson.  See Hundley v. District of

Columbia, 494 F.3d 1097, 1100–02 (D.C. Cir. 2007) (reversing judgment notwithstanding the

verdict where record evidence contradicted officer's justification for seizure of victim).  The Court

will therefore deny the Defendants' summary judgment motion as to these claims.

Less clear is whether Officer Thau's decision to strike Westfahl with his baton is protected

by qualified immunity.  Officer Thau claims it appeared that Westfahl and Officer Robinson were

struggling on the ground when he decided to strike Westfahl with his baton.  Thau Depo. 58:6–12,

66:1–3.  All parties acknowledge, and the video shows, that Westfahl and Officer Robinson fell to the ground together in an uncontrolled manner.  Video 3:24–28.  Thus a reasonable officer could have believed that it was necessary to strike Westfahl to prevent him from harming Officer Robinson, regardless of whether Officer Robinson was justified in forcibly restraining Westfahl in the first place.  While the parties dispute whether Officer Thau struck Westfahl just once or multiple times with the baton, the alleged strikes were delivered before Westfahl was clearly restrained by the officers.  Id.  Additionally, although a baton strike can be a severe use of force, Westfahl's apparent lack of a serious injury suggests that the use of force here was reasonable under the circumstances as Officer Thau perceived them.  See Oberwetter v. Hilliard, 639 F.3d 545, 555 (D.C. Cir. 2011) (citing Wasserman v. Rocacker, 557 F.3d 635, 641 (D.C. Cir. 2009)) (lack of bruise or injury tended to confirm that office used no more force than reasonably appeared necessary).[3]  Given the significant allowance the Court must make for the "tense, uncertain, and rapidly evolving circumstances" in which officers must make "split-second judgments[,]" Oberwetter, 639 F.3d at 555 (citing Graham, 490 U.S. at 396–97), the Court concludes that Officer Thau's actions are protected by qualified immunity.  Similarly, Westfahl alleges that Sergeant Mack only "assisted in bringing Mr. Westfahl to the ground by grabbing his waist."  Pl. Opp'n at 6.  Sergeant Mack did so as Officer Robinson and Westfahl were falling to the ground, when a reasonable officer could have concluded that further assistance was required to prevent Westfahl from struggling with Officer Robinson.  Video 3:25–30.  Thus, Sergeant Mack is entitled to qualified immunity as well.

      Whether Officers Cory and Robinson are protected by qualified immunity for striking Westfahl as he was lying on the ground turns on whether Westfahl actively struggled after Officer

---

[3]  Although Westfahl previously maintained that Officer Thau struck him as many as five times, Westfahl's counsel acknowledged at the hearing that there were no more than three strikes.

Robinson brought him to the ground.  The officers allege that Westfahl was swinging his arm around to avoid handcuffing.  Robinson Depo. 71:22–72:13; Cory Depo. 33:3–22.  But Westfahl says he was lying passively with his arm pinned under him, Westfahl Depo. 58:14–59:12, and the video, while unclear, appears to support his testimony, Video 3:30–45.  Striking a passive arrestee to compel affirmative compliance is a clearly established constitutional violation.  Johnson v. District of Columbia, 528 F.3d 969, 974–75 (D.C. Cir. 2008); Gravelet-Blondin v. Shelton, 728 F.3d 1086, 1093 (9th Cir. 2013), cert. denied, 134 S. Ct. 1292 (2014); Poole v. City of Shreveport, 691 F.3d 624, 640 (5th Cir. 2012); Phillips v. Cmty. Ins. Corp., 678 F.3d 513, 525 (7th Cir. 2012); Meirthew v. Amore, 417 F. App'x 494, 499 (6th Cir. 2011).  Accordingly, Officers Cory and Robinson are not entitled to qualified immunity and Westfahl's claims against them can proceed.

## ii.  First Amendment

In Count I, Westfahl claims he was assaulted and falsely arrested because he was exercising his First Amendment right to protest the World Bank and the International Monetary Fund. Government action in retaliation for speech may generate a claim under the First Amendment. Hartman v. Moore, 547 U.S. 250, 256 (2006).  The plaintiff must prove, among other things, that retaliatory animus caused the government act.  Id. at 260.  Whether or not probable cause existed is significant evidence of whether retaliatory animus fueled an arrest or prosecution.  Id. at 261; see also Reichle v. Howards, 132 S. Ct. 2088, 2095 (2012).  "Probable cause exists where the facts and circumstances are sufficient to warrant a prudent person to believe that the individual has committed an offense."  Fernandors v. District of Columbia, 382 F. Supp. 2d 63, 71 (D.D.C. 2005) (citing Gerstein v. Pugh, 420 U.S. 103, 111 (1975)).  As discussed above, whether there was probable cause to arrest Westfahl for assaulting a police officer remains an open question.  Officer Cory also testified in his deposition that he believed protesting the World Bank could be considered a hate crime.  Cory Depo. 76–78.  Because this testimony raises a reasonable inference that

Westfahl's participation in the protest may have motivated his arrest, Westfahl's First Amendment claim against Officer Cory survives summary judgment.  Westfahl makes no attempt to defend his First Amendment claims against the other officers, however.  See Pl. Opp'n at 13–15.  The Court therefore will grant summary judgment as to the First Amendment claims against Officers Robinson and Thau and Sergeant Mack.

### iii.  False Arrest

Westfahl alleges in Count V that Officer Cory arrested him without a good faith belief that there was probable cause that he had committed a crime.  A claim of false arrest either under the Fourth Amendment or as a state law tort requires the plaintiff to show an absence of probable cause. Fernandors, 382 F. Supp. 2d at 71 (citing Pierson v. Ray, 386 U.S. 547, 555 (1967)); District of Columbia v. Murphy, 635 A.2d 929, 931–32 (D.C. 1993).  As discussed above, whether Officer Cory had probable cause, and reasonably believed he had probable cause, to arrest Westfahl are disputed questions of fact that are inappropriate for summary judgment.  Accordingly, Westfahl's false arrest claim against Officer Cory survives summary judgment.

### iv.  Abuse of Process

Count IX alleges that arresting and charging Westfahl with assaulting a police officer was an abuse of the legal process, designed to create a post-hoc justification for the officers' use of excessive force.  Abuse of process is "the use of the legal system 'to accomplish some end which is without the regular purview of the process, or which compels the party against whom it is used to do some collateral thing which he could not legally and regularly be required to do.'"  Scott v. District of Columbia, 101 F.3d 748, 755 (D.C. Cir. 1996) (quoting Brown v. Hamilton, 601 A.2d 1074, 1079 (D.C. 1992)).  "[T]he fact that a person acts spitefully, maliciously, or with an ulterior motive in instituting a legal proceeding is insufficient to establish abuse of process[.]"  Id.  In Scott, the D.C. Circuit rejected the argument that officers could commit an abuse of process by arresting

and charging the plaintiff to "cover[] up their [alleged] use of excessive force." Id. The court

reasoned that "[t]he fact that the officers expected to realize some benefit by covering up their own

alleged wrongdoing simply points to an ulterior motive, not the kind of perversion of the judicial

process that gives rise to a cause of action for abuse of process." Id. at 756. This reasoning applies

here to the extent Westfahl alleges the police charged him to conceal their excessive force.

Westfahl alternatively argues that the police instituted proceedings in order to intimidate

him into declining to file civil charges against the officers. Although Westfahl did threaten to sue

the officers after being arrested, Pl. Opp'n at 24 (citing Robinson Depo. at 100:13–102:16), he

offers no evidence to suggest that the officers explicitly or implicitly encouraged him not to assert

his rights. It is unclear in any event why filing criminal charges against Westfahl would make it

less likely that he would file a civil suit against the officers. On this record, no reasonable jury

could conclude that the officers charged Westfahl for that purpose. The Court will therefore grant

the government's motion for summary judgment on Count IX.

v.      Defamation

Westfahl alleges in Count X that Officers Robinson and Cory defamed him by stating and

writing in a police report that he assaulted a police officer. Defamation under D.C. law requires a

plaintiff to show a defamatory statement, publication to a third party, negligence, and either that the

statement is actionable as a matter of law or that publication caused the plaintiff special harm.

Oparaugo v. Watts, 884 A.2d 63, 76 (D.C. 2005) (citation and internal quotation marks omitted).

Publication requires making a statement to at least one other person. Charlton v. Mond, 987 A.2d

436, 438 n.4 (D.C. 2010) (quoting Restatement (Second) of Torts § 577(1) (1977)). A false

allegation of criminal wrongdoing is defamation *per se*, requiring no showing of special damages.

See, e.g., Von Kahl v. Bureau of Nat. Affairs, Inc., 934 F. Supp. 2d 204, 218–19 (D.D.C. 2013).

Defamatory statements made under a qualified privilege, such as those of police acting in an official

capacity, are not actionable so long as "the communication [is] made in good faith upon a subject matter in which the party communicating or the party receiving the communication has a legitimate interest." Cousins v. Hathaway, Case. No. 12-1058, 2014 WL 4050170, at *11 (D.D.C. Aug. 15, 2014) (citing Jackson v. District of Columbia, 541 F. Supp. 2d 334, 344 (D.D.C. 2008)).

Westfahl asserts that Officer Cory's arrest report and Officer Robinson's communications to Officer Cory constitute defamation.  Both officers intentionally published statements to at least one other person that accuse Westfahl of a crime, which is actionable *per se*.  The officers claim a qualified privilege, but whether they believed in good faith that Westfahl struck Officer Robinson remains a jury question as discussed above.  See Mosrie v. Trussell, 467 A.2d 475, 477 (D.C. 1983) (citing Altimont, Inc. v. Chatelain, 374 A.2d 284, 290 (D.C. 1977)) ("a qualified privilege exists only if the publisher believes, with reasonable grounds, that his statement is true").[4]  The Court therefore will deny the Defendants' motion for summary judgment on Count X.

### B.    Municipal Liability as to Fourth Amendment Claim

In Count III, Westfahl seeks to hold the District of Columbia liable for the officers' alleged constitutional violations.  To do so, he must demonstrate that the city had a policy or practice of deliberate indifference to constitutional violations by its officers that caused his injury.  See City of Canton v. Harris, 489 U.S. 378 (1989).  Westfahl's claim for municipal liability rests largely on a Memorandum of Agreement ("MOA") between the Department of Justice and the District regarding MPD's use of force investigations.  MOA, available at http://www.justice.gov/crt/about/spl/documents/dcmoa.php.  The MOA resulted from the District's request that the DOJ audit MPD's practices following widespread criticism of MPD's handling of

---

[4]  Westfahl alternatively contends that Officer Robinson may be liable as a co-conspirator with Officer Cory.  The District responds that its officers cannot be held liable under a theory of conspiracy because of the intracorporate conspiracy doctrine.  Because the Court concludes that Officer Robinson may be held directly liable for his statement to Officer Cory, it need not address this issue.

excessive force incidents.  Id.  Standing alone, the MOA does not demonstrate that the city had a custom or policy of tolerating excessive force; to the contrary, it shows that the city sought to improve its policies by investigating alleged abuses and implementing better programs.  See, e.g., Robinson v. District of Columbia, 403 F. Supp. 2d 39, 55 (D.D.C. 2005) (recounting the Districts proactive efforts to curb excessive force by requesting that the DOJ review the city's use of force incidents and by implementing programs to improve its polices both before and after publication of the MOA); Byrd v. District of Columbia, 297 F. Supp. 2d 136, 140 (D.D.C. 2003), aff'd sub nom, Byrd v. Gainer, No 3-7196, 2004 WL 885228 (D.C. Cir. Apr. 26, 2004) ("the MOA demonstrates that the District was not indifferent to the problem; on the contrary, it undertook affirmative steps as early as 1999 to remedy the situation").  Rather than relying on the MOA itself, however, Westfahl asserts that MPD knowingly failed to implement necessary investigation and discipline procedures recommended in the MOA, and that these failures caused his injuries by fostering a permissive atmosphere towards the use of excessive force by MPD officers.

<blockquote>i.  <u>Legal Standards</u></blockquote>

A municipality may be held liable for the constitutional violations of its officers if they are caused by municipal customs or practices.  Monell v. Dep't of Soc. Servs. of New York, 436 U.S. 658, 691 (1978).  Failing to train municipal employees may constitute a city policy, but only if the failure "evidences a 'deliberate indifference' to the rights of its inhabitants[.]"  City of Canton, 489 U.S. at 389–90 & n.7.  Deliberate indifference "simply means that, faced with actual or constructive knowledge that its agents will probably violate constitutional rights, the city may not adopt a policy of inaction."  Warren v. District of Columbia, 353 F.3d 36, 39 (D.C. Cir. 2004) (citing Farmer v. Brennan, 511 U.S. 825, 841 (1994)).  Because municipal liability is not an "exercise of second-guessing municipal employee-training programs[,]" City of Canton, 489 U.S. at 389, deliberate

indifference requires a showing of "systematic and grossly inadequate training, discipline and supervision." Parker v. District of Columbia, 850 F.2d 708, 712 (D.C. Cir. 1988).

A municipality may be deliberately indifferent when it fails to train employees "'concerning a clear constitutional duty implicated in recurrent situations that a particular employee is certain to face.'" Dorman v. District of Columbia, 888 F.2d 159, 164 (D.C. Cir. 1989) (citing Harris, 489 U.S. at 1209 (O'Connor, J., concurring in part and dissenting in part)). Alternatively, inadequate training or supervision may demonstrate deliberate indifference "'when the frequency of constitutional violations makes it obvious to the municipality that additional training or supervision is necessary.'" Matthews v. District of Columbia, 730 F. Supp. 2d 33, 38 (D.D.C. 2010) (quoting Fernandors, 382 F. Supp. 2d at 76). Westfahl does not contend that excessive force incidents were sufficiently frequent to put the city on notice that it must do more; he asserts deliberate indifference based solely on a facially insufficient investigation and discipline system.

### ii. Adequacy of Investigation and Discipline Procedures

Taking all reasonable inferences in his favor, Westfahl's evidence of inadequate investigation and disciplinary practices by the District can be summarized as follows:

1) The District failed to properly fund and staff the Force Investigation Team ("FIT")—an independent unit that is required to investigate all serious use of force incidents—causing it to refer cases like Westfahl's back to police districts for investigation. Deposition of Sergeant Richard Ehrlich ("Ehrlich Depo.") 9:9–21; Deposition of Lieutenant Terry-Weeks ("Terry-Weeks Depo.") 105:8–106:11; MOA ¶ 57.

2) In 2008 and 2009, MPD inappropriately exonerated officers who failed to cooperate with the Office of Police Complaints ("OPC")—an independent agency that reviews citizen complaints of police misconduct—and regularly withheld documents that OPC requested to complete its investigations. Pl. Opp'n Ex. K (Police Complaints Board OPC Annual Report Fiscal Year 2010 ("2010 OPC Report")).

3) The Use of Force Review Board ("UFRB")—a three-person board that reviews use of force investigations to determine next steps—reviews only a tenth of the use of force incidents involving MPD, although the MOA requires it to investigate all cases, and the UFRB did not review use of force investigation methods generally, only the results of investigations. Pl. Opp'n Ex S (Internal Affairs Bureau 2010 Trend Report); Deposition of Captain Michael Gottert ("Gottert Depo.") 13:1–14:7; MOA ¶ 67.

4) MPD did not promulgate an investigatory manual for district supervisors and investigators, or video record investigation interviews. Terry-Weeks Depo. 128:18–21, 139; MOA ¶¶ 81, 83.

5) The District failed to establish a centralized record system of use of force investigation reports. Final Report of the Independent Monitor for the Metropolitan Police Department ("Independent Monitor Final Report") 79–81 (June 13, 2008), available at http://www.policemonitor.org/MPD/reports/080613reportv2.pdf.

6) MPD routinely failed to terminate officers found by the UFRB to have used excessive force. Id. at 79; Pl. Opp'n Ex. AA (summary of 2007–2010 OPC investigation results).

7) MPD has unrealistically strict investigation timelines that prevent an officer from being disciplined if the department does not issue a notice of adverse action within 90 days from when it knew or should have known of the misconduct and then issues a final notice within 55 days of the initial notice. Gottert Depo. 26:15–27:22; see also Pl. Opp'n Ex. U (Public Oversight Hearing on the Performance of the MPD, Testimony of Cathy L. Lanier, Chief of Police).[5]

To be sure, these allegation raise legitimate concerns about potential shortcomings in MPD's investigation and discipline methods. But specific inadequate practices do not necessarily evidence a deliberate indifference to constitutional violations if the city's overall policies demonstrate that it has undertaken efforts to reduce the illegal use of force. For this reason, courts in this district routinely reject arguments that the MOA itself and the major problems it identified evince deliberate indifference by the city. E.g., Byrd v. District of Columbia, 297 F. Supp. 2d 136, 140 (D.D.C. 2003), aff'd sub nom, Byrd v. Gainer, 03-7196, 2004 WL 885228 (D.C. Cir. Apr. 26, 2004). In fact, the reports on which Westfahl relies generally approve of MPD's investigation and discipline practices. See 2010 OPC Report (finding significant improvements in MPD's responses to officers who fail to cooperate with OPC investigations); Independent Monitor Final Report 3–4 (terminating monitoring of the MOA early due to finding that MPD has substantially complied with all but 5 of the requirements set forth in the MOA's 193 paragraphs). Westfahl has not

---

[5] Westfahl also asserts that the large number of officers and supervisors in the area during his arrest shows that the officers' conduct can be attributed to the District. Westfahl analogizes to Matthews v. District of Columbia, 730 F. Supp. 2d 33 (D.D.C. 2010), but that case, unlike here, involved frequent constitutional violations over several years in multiple places. Id. at 38.

demonstrated how the problems he raises reflect a policy of tolerance of excessive force as opposed to genuine, although perhaps not always successful, efforts to grapple with the types of problems to be expected in any large metropolitan police department.  The District therefore is entitled to summary judgment on Count III.

### iii. Causation

In order to establish municipal liability Westfahl must also show that MPD's deliberate indifference was the "moving force" behind, or a "substantial factor" in, his injuries.  Oklahoma City v. Tuttle, 471 U.S. 808, 820 (1985); Parker, 850 F.2d at 714.  Westfahl has offered no evidence to show that the investigatory failures he raises led to an increase in excessive force incidents, see Robinson v. District of Columbia, 403 F. Supp. 2d 39, 56 (D.D.C. 2005) (failure to demonstrate causality where plaintiff did not put forth statistical evidence "or evidence of other failures to investigate and discipline officers for excessive use of force."), or expert testimony that these investigatory failures would tend to increase the frequency of excessive force incidents.  Nor has he demonstrated that any of the officers involved should have been investigated or disciplined for past incidences of excessive force.  See Robinson, 965 F. Supp. 2d at 96 (finding no causation where no evidence showed that the officer in question previously engaged in excessive force); Muhammad v. District of Columbia, 881 F. Supp. 2d 115, 123–24 (D.D.C. 2012) (plaintiff failed to demonstrate that officers involved would have been investigated and/or disciplined previously if not for the city's failures).

Instead, Westfahl contends that adequate investigations and more stringent discipline would discourage officers from using excessive force.  While this inference may be reasonable, a more lax discipline system does not demonstrate that MPD's practices were "*the* moving force" behind this specific incident.  Tuttle, 471 U.S. at 820 (emphasis added); see also Cox, 821 F. Supp. at 15 (causation demonstrated because defendant officer should have been investigated for a prior

instance of excessive force).  Westfahl also points to testimony that the Defendants did not fear

discipline for arresting Westfahl.  Thau Depo. 86; Mack Depo. 77.  But the officers maintain that

they committed no wrongdoing, so their statements are not inconsistent with fearing discipline if

they believed they had in fact used excessive force.  Lastly, the Defendants' failure to recall any

specific officers who had been disciplined for using excessive force, Thau Depo. 81; Cory Depo.

21–22, cannot establish causation unless they believed certain officers had escaped discipline for

using excessive force, which the record does not reflect.  Accordingly, a reasonable jury could not

find that Westfahl's injuries were caused by MPD's investigatory procedures and thus the Court

will grant summary judgment to the District on Count III for that reason as well.

### C.   Fifth Amendment Claim Against the District

Finally, in Count IV, Westfahl alleges that the District's former policy of withholding

medical devices from arrestees violated his Fifth Amendment rights.  The Fifth Amendment

prohibits subjecting pretrial detainees to punitive conditions.  Bell v. Wolfish, 441 U.S. 520, 535

(1979).  A condition of detention is punitive if it does not rationally serve a legitimate pretrial

detention purpose or is excessive in relation to its legitimate purpose.  Id.  In other words, a

challenged government policy does not violate the Fifth Amendment if it is "reasonably related to

legitimate governmental objectives."  Block v. Rutherford, 468 U.S. 578, 586 (1984).  The District

contends that it has a legitimate interest in keeping contraband out of the D.C. jail and that it cannot

readily determine whether a purported medical device is legitimate, prescribed medication.  The

former policy was not excessive, reasons the District, because arrestees were brought to the hospital

if medical issues arose.  And Westfahl acknowledges that he received appropriate treatment and

suffered no long-term injuries from his asthma attack.  Pl. Resp. ¶¶ 37–38.

The government's argument meets the low threshold of being "reasonably related to

legitimate governmental objectives."  Block, 468 U.S. at 586.  Although the policy may have been

an imperfect response to the perceived problem, it was not an irrational one and there is no

indication that MPD withheld medical devices from arrestees as a punitive measure.  The Court

therefore will grant the Defendants' motion for summary judgment on Count IV.

**IV.     Conclusion**

For the foregoing reasons, the Court will grant in part and deny in part the Defendants'

motion for summary judgment, deny Westfahl's cross motion for partial summary judgment, and

deny the Defendants' motion to strike.  The Court will issue an Order consistent with this

Memorandum Opinion.


_____
CHRISTOPHER R. COOPER
United States District Judge

Date:  ___December 12, 2014_____