**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

| | |
|---|---|
| **SHAWN WESTFAHL,**<br><br>        Plaintiff,<br><br>        v.<br><br>**DISTRICT OF COLUMBIA, <u>et al.</u>,**<br><br>        Defendants. | Case No. 11-cv-02210 (CRC) |

### **MEMORANDUM OPINION**

Officers of the District of Columbia Metropolitan Police Department ("MPD") arrested Plaintiff Shawn Westfahl during a protest march against the World Bank and charged him with assaulting a police officer. Westfahl brought suit alleging violations of his constitutional rights pursuant to 42 U.S.C. § 1983 and related common law torts. Among his claims were that the officers used excessive force in arresting him in violation of the Fourth Amendment and in so doing, also committed assault and battery. After a three-day trial, a jury found for Westfahl as to the conduct of one of the officers but against him as to the conduct of another officer. The District of Columbia now moves for judgment as a matter of law and to alter or amend the judgment, arguing that the officer whom the jury found liable is entitled to qualified immunity and common law privilege for his actions; that the District of Columbia is therefore not vicariously liable for that officer's actions; and that the weight of the evidence does not support the jury's verdicts as to this officer or the District. For the reasons explained below, the Court will deny the District's motion.

    **I.**    **Background**

Because this motion requires the Court to consider the sufficiency of the evidence in support of the jury's verdict and to analyze the extent to which the jury was entitled to credit the

differing accounts of the witnesses in reaching its verdicts, the facts below are presented from the varying perspectives of the plaintiff, Mr. Westfahl, and the two defendants, Officers Todd Cory and Robert Robinson.

        A.        <u>Westfahl's Testimony</u>

The facts according to Westfahl are as follows. On the evening of October 9, 2010, Westfahl participated in a protest march against the World Bank and the International Monetary Fund ("IMF") in Washington, D.C. He carried a flag while he and others chanted "From D.C. to Greece, F[uck] the police." Trial Tr. vol. 1, at 21. At the 2100 block of L Street, Northwest, police stopped the protestors and ordered them to "get on the sidewalk," <u>id.</u>, and "back up," <u>id.</u> at 22. Westfahl complied, continuing to hold the flag upright until, "after being pushed back physically by the police," he "lowered the flag to [his] right to hand one end [of the flagpole] to another protestor." <u>Id.</u> Westfahl testified that he did not lower the pole particularly quickly and that there were no police officers standing in its path as he lowered it.

Westfahl next described relinquishing the flagpole after an officer grabbed it from him. <u>Id.</u> at 24. The officer "[i]mmediately broke it." <u>Id.</u> At that point, Westfahl "was . . . put in a bear hug and taken down," which surprised him because he "hadn't done anything illegal." <u>Id.</u> at 25. He testified that he did not try to resist the bear hug, and was "immediately pinned to the ground." <u>Id.</u> at 26. While on the ground he "felt blows to [his] body, . . . head, . . . back[, and] chest area." <u>Id.</u> He still did not attempt to resist because he was "pinned to the ground," such that "there was nothing that [he] could do," and he "didn't want to seem like [he was resisting] or show any signs of resistance." <u>Id.</u> at 26–27. He testified that, despite his lack of resistance, he heard the officers say "[s]top resisting," <u>id.</u> at 27, and tell him to give them his arm, which he could not do because it was "pinned underneath [his] body," <u>id.</u> at 29. He also testified that he

wanted to give the police his arm because he knew that if they could handcuff him, "they would stop beating" him. Id. Eventually, the officers "released the pressure of their body weight off of" Westfahl and were able to secure his arm and handcuff him. Id. at 30. They then sat Westfahl on the curb, where his picture was taken. The picture, depicting a "laceration or abrasion" on Westfahl's head, was entered into evidence. Id. at 32.

Plaintiff also introduced into evidence video footage taken by a documentary film student who had attended the protest in order to film it. See id. at 9. The footage shows the officers' arrival at the protest, their initial interaction with the protestors, including Westfahl, and Westfahl being pulled to the ground and arrested. It is shot from a few feet away, see id. at 11 (testimony by the documentary student, Benjamin Biros, that he shot the footage from "only about ten feet away"), with the officers' backs to the camera. It shows a flagpole being lowered, but does not clearly depict any officer being struck with the flagpole. When asked about the video on cross-examination, Westfahl agreed that he was arrested only "a few seconds" after he was pulled to the ground. Id. at 54.

    B.  Officer Cory's Testimony

Defendant Officer Cory testified that he was one of the officers who arrested Westfahl on October 9, 2010. Cory served as a mountain-bike patrol officer with the MPD's Civil Disturbance Unit ("CDU") along with Officer Robinson, the other officer who arrested Westfahl that evening. The unit, responding to a call to disperse a "disorderly" group of protestors, arrived at 21st and L Streets, Northwest, while the protest was ongoing. Officer Cory testified that Officer Robinson arrived ahead of him, and that as Officer Cory approached the protestors and dismounted his bike, he saw "a demonstration sign[] come down and hit Officer Robinson across the top of his mountain bike helmet." Trial Tr. vol. 2, at 175. During Officer Cory's

testimony, the defense introduced video footage taken by the MPD, part of which Officer Cory identified as depicting the flagpole being swung.

The next thing Officer Cory saw was "Mr. Westfahl being taken to the ground." Id.  He then "moved in to assist" Officer Robinson "with detaining and attempting to place handcuffs on Mr. Westfahl, . . . engag[ing] Mr. Westfahl . . . on [his] right side" and to the right of Officer Robinson. Id. at 177–78. Officer Cory testified that he "was trying to get [Westfahl's] right arm from under his body" but "could not" because Westfahl "was tensing up" and "pulled back" whenever Officer Cory almost had the arm hooked. Id. at 178. Officer Cory characterized Westfahl as "[a]ctively resisting" in this manner. Id.  In order to induce Westfahl to comply, Officer Cory "deployed a softening blow, otherwise known as a distractionary strike," which he described as a "closed fist" strike, or a "very short, low-energy blow," that is "designed to distract an individual [by] targeting the muscles or nerves." Id. at 178–79. By delivering the softening blow, Officer Cory was able to secure Westfahl's arm and handcuff him, at which point the officers moved Westfahl to a curb away from the crowd. On cross-examination, Officer Cory was asked why he chose to use a softening blow when he had "options other than a pain technique blow," such as "standing [Westfahl] up or rolling him . . . toward Officer Robinson to release his right side." Id. at 195. Officer Cory responded that, in his judgment, the most reasonable and safest option was the softening blow because at that point, Westfahl's right "hand [wa]s an unknown," and could have been holding a weapon. Id.

When asked whether he observed what Officer Robinson was doing during this time, he testified that he "really couldn't see" because he was "focused on Mr. Westfahl's right arm." Id. at 179. After Westfahl was handcuffed, Officer Cory observed that Westfahl "had a sizeable abrasion on the upper right quadrant of his forehead." Id. at 180. As the arresting officer,

4

Officer Cory placed Westfahl under arrest for felony assault on a police officer and possession of a prohibited weapon, the wooden flagpole. He testified that, while he had not seen who struck Officer Robinson with the flagpole, it "was relayed" to him that Westfahl had committed the assault. Id. at 181.

### C. Officer Robinson's Testimony

Defendant Officer Robinson testified that he and his bike unit were called to the World Bank and IMF protest at around 10:30 pm on the evening of October 9, 2010, and that when he arrived, he observed a "lot of yelling" by the protestors, a "lot of signs, [and] a lot of noise." Id. at 107. He approached the protestors and told them to back up. Noticing that one protestor, who turned out to be Westfahl, "was not backing up," Officer Robinson walked toward him and repeated, "Hey, back up. It's time to go home." Id. at 108. When he got within arm's length of the protestor, Officer Robinson observed that the protestor was holding a sign, and then he felt a "wooden . . . board just come down on [his] head really hard," which "stunned" him and caused his helmet to slide down, obscuring his vision for a moment. Id.; see also id. at 129. He testified that he was shocked from the blow and "grabbed ahold of" Westfahl, "struggling for a few seconds and subsequently getting him to the ground." Id. at 109. He then noted that, "up until two weeks ago," including when he gave deposition testimony prior to trial, "[he] had no recollection" of what happened next,[1] other than his shouting "[s]top resisting." Id.

But having viewed the video footage of the incident two weeks prior to trial, Officer Robinson recalled at trial that he remembered "put[ting] [his] forearm down to the back of [Westfahl's] shoulder blades trying to hold him to the ground and get his arms cuffed" and that

---

[1] Despite his testimony that the blow had stunned him and caused memory loss, Officer Robinson testified on cross-examination that he had not sought medical attention following the incident. See Trial Tr. vol. 2, at 132.

5

"there were multiple officers trying to handcuff him." Id. Officer Robinson testified that he feared that if he did not "get ahold" of Westfahl quickly, Westfahl "could hit [him] again." Id. at 110. Though he denied striking Westfahl on the head, Officer Robinson testified that he "was pushing down on [Westfahl's] shoulder blades trying to hold him to the ground" and that because he "felt like [he] wasn't able to get [Westfahl's] body to move or his arm to move" to enable him to handcuff Westfahl, he "just kept pushing down" until the officers were able to handcuff Westfahl. Id. at 117–18. On cross-examination, Officer Robinson agreed that the video footage submitted by Westfahl, which showed the arrest at closer range than did the footage taken by the MPD, showed Officer Robinson's elbow forcefully sliding from Westfahl's shoulder blades onto his neck, near his head. See id. at 142–45. Officer Robinson also acknowledged having observed a "slight abrasion" on Westfahl's head after he was handcuffed. Id. at 116.[2]

    D.    Procedural History

At the conclusion of the three-day trial, the jury rendered its verdicts on July 31, 2015. The jury found that Officer Robinson used excessive force in violation of the Fourth Amendment and that Officer Robinson and, by extension, the District of Columbia committed assault and battery against Westfahl. As to Officer Cory, the jury found, in relevant part, that he did not falsely arrest or use excessive force against Westfahl. It also found that Officer Cory and the

---

[2] The jury also heard testimony by the documentary student, Benjamin Biros, who testified that he was "absolutely" in a "position to see if Mr. Westfahl had swung the flagpole at someone," and that he did not see Westfahl strike any of the officers with the flagpole. Trial Tr. vol. 1, at 12. And it heard testimony by Sergeant Craig Mack of the MPD, who testified that he saw "Westfahl's flag pole hit Robert Robinson in the helmet." Trial Tr. vol. 2, at 220.

District of Columbia were not liable for false arrest or assault or battery of Westfahl.[3] See Verdict Form, ECF No. 120.  The jury awarded Westfahl $10,000 in damages.

On August 28, 2015, the District of Columbia moved for judgment as a matter of law under Federal Rule of Civil Procedure 50(b), and to alter or amend the judgment under Rules 59(e) and 60(b)(6).  The District argues that (1) Officer Robinson is entitled to qualified immunity as to the excessive force claim and common law privilege as to the assault and battery claims; (2) because Officer Robinson is entitled to common law privilege, the District of Columbia is not liable for the assault and battery by Robinson; (3) because Officer Robinson is entitled to immunity and privilege, it would be clear error not to grant Defendants judgment as a matter of law or to alter or amend the judgment in their favor; and (4) the weight of the evidence does not support the verdicts against Officer Robinson and the District of Columbia because the MPD video supports Officer Robinson's testimony that Westfahl struck him on the head with the flagpole.

**II.     Standard of Review**

Rule 50(b) of the Federal Rules of Civil Procedure provides that, within 28 days of the entry of judgment following a jury trial, a party may challenge the verdict by renewing a motion for judgment as a matter of law originally made prior to jury deliberations.  See Fed. R. Civ. P. 50(b).  A "jury's verdict will withstand challenge unless the evidence and all reasonable inferences that can be drawn therefrom are so one-sided that reasonable men and women could not disagree on the verdict."  Scott v. District of Columbia, 101 F.3d 748, 753 (D.C. Cir. 1996).  In other words, judgment as a matter of law is proper if, "'considering the evidence in the light

---

[3] Though not relevant to the motion at hand, the jury also found Officer Cory not liable for violating Westfahl's First Amendment rights and for defamation.

most favorable to the [nonmoving party] and making all reasonable inferences in [its] favor,' . . . the Court concludes that there is no legally sufficient evidentiary basis for a reasonable jury to have found in [its] favor under controlling law." Pitt v. District of Columbia, 558 F. Supp. 2d 11, 15 (D.D.C. 2008) (quoting Hendry v. Pelland, 73 F. 3d 397 (D.C. Cir. 1996)). "In making that determination, a court may not" substitute its judgment for that of the jury by "assess[ing] the credibility of witnesses or weigh[ing] the evidence." Hayman v. Nat'l Academy of Sciences, 23 F.3d 535, 537 (D.C. Cir. 1994). Rather, it may grant the motion "only if 'under the governing law, there can be but one [] conclusion as to the verdict'—that it defies reason." Kakeh v. United Planning Org., 655 F. Supp. 2d 107, 115 (D.D.C. 2009) (alteration in original) (quoting Miller v. Holzmann, 563 F. Supp. 2d 54, 76 (D.D.C. 2008)).

Rule 59(e) provides that "[a] motion to alter or amend a judgment must be filed no later than 28 days after the entry of the judgment." Fed. R. Civ. P. 59(e). "A Rule 59(e) motion is discretionary and need not be granted unless the district court finds that there is an intervening change of controlling law, the availability of new evidence, or the need to correct a clear error or prevent manifest injustice." Long v. Howard Univ., 512 F. Supp. 2d 1, 26 (D.D.C. 2007) (quoting Messina v. Krakower, 439 F.3d 755, 758–59 (D.C. Cir. 2006)).

Rule 60(b) provides that, upon a motion filed "within a reasonable time," Fed. R. Civ. P. 60(c)(1), a "court may relieve a party . . . from a final judgment" for, as relevant here, "any . . . reason that justifies relief," id. 60(b). "'[I]n most cases, the bar stands even higher for a party to prevail on a Rule 60(b) motion for relief from judgment' than on a Rule 59(e) motion." Kline v. Archuleta, 309 F.R.D. 91, 92 (D.D.C. 2015) (quoting Uberoi v. Equal Emp't Opportunity Comm'n, 271 F. Supp. 2d 1, 2 (D.D.C. 2002)).

**III.     Analysis**

    A.     <u>Qualified Immunity</u>

Defendants first contend that Officer Robinson is entitled to qualified immunity with respect to Westfahl's excessive-force claim. "Qualified immunity shields federal and state officials from money damages unless a plaintiff" shows "(1) that the official violated a statutory or constitutional right, and (2) that the right was 'clearly established' at the time of the challenged conduct." <u>Ashcroft v. al-Kidd</u>, 131 S. Ct. 2074, 2080 (2011) (quoting <u>Harlow v. Fitzgerald</u>, 457 U.S. 800, 818 (1982)). Because the "Fourth Amendment's prohibition against unreasonable seizures of the person" provides "constitutional protection against physically abusive governmental conduct," it is one of the primary sources of constitutional protection against excessive force. <u>Graham v. Connor</u>, 490 U.S. 386, 394 (1989). And where an "excessive force claim arises in the context of an arrest . . . , it is most properly characterized as one invoking the protections of the Fourth Amendment." <u>Id.</u>; <u>see also id.</u> at 395 ("Today we make explicit . . . that *all* claims that law enforcement officers have used excessive force . . . in the course of an arrest . . . should be analyzed under the Fourth Amendment . . . ."). Mr. Westfahl thus had a right to be free from excessive force under the Fourth Amendment.

Whether that right was clearly established with respect to Officer Robinson's actions is determined by whether "the contours of the right [were] sufficiently clear that a reasonable offic[er] would understand that what he [was] doing violate[d] that right." <u>Anderson v. Creighton</u>, 483 U.S. 635, 640 (1987). In other words, the "dispositive inquiry in determining whether a right is clearly established is whether it would be clear to a reasonable officer that his conduct was unlawful in the situation he confronted." <u>Fenwick v. Pudimott</u>, 778 F.3d 133, 137 (D.C. Cir. 2015) (quoting <u>Saucier v. Katz</u>, 533 U.S. 194, 202 (2001)). And "[b]ecause the

9

inquiry 'must be undertaken in light of the specific context of the case, not as a broad general proposition,' it requires that [the Court] take a closer look at the facts." Id. (citation omitted) (quoting Saucier, 533 U.S. at 201).

Because the Court's inquiry arises in the context of post-verdict motions, it must consider the evidence in the light most favorable to Westfahl as the nonmoving party. See Pitt, 558 F. Supp. 2d at 15. The question "whether a § 1983 defendant's conduct violates the 'clearly established' constitutional rights of the plaintiff is a pure question of law that must be resolved by the court," Pitt v. District of Columbia, 491 F.3d 494 (D.C. Cir. 2007), but the jury may make the "factual findings relevant to the question of qualified immunity," id. (quoting Knussman v. Maryland, 272 F.3d 625, 634 (4th Cir. 2001)). In other words, the Court may not rely on the jury to answer the legal question whether any reasonable officer in Officer Robinson's position would have known that his conduct violated Westfahl's constitutional rights. But, in deciding this post-verdict motion, the Court "must apply the qualified immunity framework to the facts that the jury found (including the [D]efendant's subjective intent)." A.D. v. Cal. Hwy. Patrol, 712 F.3d 446, 459 (9th Cir. 2013); see also Acevedo-Garcia v. Monroig, 351 F.3d 547, 563 (1st Cir. 2003) ("The availability of qualified immunity after trial is a legal question informed by the jury's findings of fact, but ultimately committed to the court's judgment."); Adams v. Metiva, 31 F.3d 375, 387 (6th Cir. 1994) ("[T]he legal question of immunity is completely dependent upon which view of the facts is accepted by the jury." (quoting Brandenburg v. Cureton, 882 F.2d 211, 216 (6th Cir. 1989))).

The Defendants first argue that the jury's factual findings in favor of Officer Cory conflict with its findings against Officer Robinson to such an extent that the verdicts with respect to each officer are inconsistent. They urge the Court to conclude that because the jury found for

Officer Cory on Westfahl's claim of false arrest, the arrest was therefore lawful and Officer Robinson was therefore "entitled to use force against [Westfahl] to effectuate that arrest." Defs.' Mot. J. Matter of Law and Mot. Alter or Amend J. ("Defs.' Mot.") 10.

This line of reasoning stretches the meaning of the jury's verdict. The jury did not make a finding as to false arrest by Officer Robinson. The only false-arrest finding it made was that Westfahl failed to prove by a preponderance of the evidence that *Officer Cory* falsely arrested him. See Verdict Form, ECF No. 120. As to Officer Robinson, the jury found that he used excessive force and committed assault and battery against Westfahl. See id. at 1–2. These verdicts are reconcilable. The jury was entitled to credit Westfahl's testimony that he did not strike Officer Robinson with the flagpole and to discredit Officer Robinson's testimony that he did. It was also entitled to find that Officer Robinson did not reasonably believe that Westfahl had struck him with the flagpole, which would have allowed the jury to conclude, in turn, that the force used by Officer Robinson to pull Westfahl to the ground and then to effectuate the arrest was unlawful. At the same time, the jury was entitled to credit Officer Cory's testimony that he saw Westfahl strike Officer Robinson with the flagpole because, even if he had been mistaken, Officer Cory could have reasonably believed he had seen what he described. The jury could thus have reasonably concluded that Officer Cory's arrest of Westfahl for assaulting a police officer was lawful, while at the same time concluding that Officer Robinson's use of force was not. As a result, the jury's false-arrest verdict as to Officer Cory does not render its excessive-force verdict as to Officer Robinson unreasonable.

In addition, Defendants assert that the MPD video footage "depicts a wooden flag pole being violently swung in the direction of Defendant Robinson," supporting the jury's finding that the arrest was lawful and demonstrating that Officer Robinson's use of force against Westfahl

was objectively reasonable.  They urge that when video evidence "clearly contradicts the version of the story told by [the plaintiff] . . . so that no reasonably jury could believe it, a court should not adopt that version of the facts."  Defs.' Mot. 9 (quoting <u>Scott v. Harris</u>, 550 U.S. 372, 378–80 (2007)) (internal quotation mark omitted).

  The MPD video, however, is inconclusive at best.  Taken from a different angle and farther away than the video Westfahl presented at trial, it does not provide a clear depiction of the events.  All that is discernible of relevance to Officer Robinson's defense is a dark object— which appears to be a flagpole, though not entirely clearly—moving through the air, followed by police officers rapidly huddling and kneeling to the ground around a central point—presumably, Westfahl after Officer Robinson pulled him to the ground.  It is not clear who is holding the dark object, what caused it to move through the air, or whether it struck anyone.  This footage spans only a few seconds before the video cuts away to other angles of the protest and the officers there to break it up.  Accordingly, the MPD video does not compel only one reasonable set of inferences at odds with the jury's verdict.

  Because the jury was not required to credit Officer Robinson's testimony, and because the Court must view the evidence and the jury's factual findings in the light most favorable to Westfahl, the evidence presented at trial was sufficient to support a conclusion that Officer Robinson did not reasonably believe that Westfahl struck him on the head with the flagpole, though Officer Cory may well have reasonably believed that Westfahl did.  See <u>Halcomb v. Woods</u>, 767 F. Supp. 2d 123, 135–36 (D.D.C. 2011) (concluding that the jury was not required to credit testimony of a defendant against whom it found for violating the plaintiff's constitutional rights and, taking the evidence in the light most favorable to the nonmoving party on a Rule 50 motion, concluding that the evidence at trial supported the plaintiff's version of

events). From those determinations, the "jury reasonably could have inferred . . . that [Officer Robinson] could have had no reasonable belief" that his use of force was justified. Id. at 136. Against this factual background as found by the jury, it would have been clear to a reasonable officer in Officer Robinson's position, not having a reasonable belief that Westfahl had struck him, that exerting force to pull Westfahl to the ground and then to arrest him would violate Westfahl's Fourth Amendment right to be free from excessive force. See Morton v. Kirkwood, 707 F.3d 1276, 1281–82 (11th Cir. 2013) (finding use of force excessive when the officer had no reason to believe that the plaintiff had committed any crime or posed any threat). Officer Robinson is thus not entitled to qualified immunity on the excessive force claim.

      B.     Common Law Privilege

Defendants also contend that Officer Robinson is entitled to common law privilege with respect to Westfahl's assault and battery claims against him, though they do not offer additional bases to support this contention other than those they assert for qualified immunity. Under District of Columbia law, a police officer can establish that an arrest was privileged "by demonstrating that '(1) he or she believed, in good faith, that his or her conduct was lawful, and (2) this belief was reasonable.'" Bolger v. District of Columbia, 608 F. Supp. 2d 10, 27 (D.D.C. 2009) (quoting Scott v. District of Columbia, 101 F.3d at 754–55; District of Columbia v. Murphy, 631 A.2d 34, 36 (D.C. 1993)) (internal quotation marks omitted). Because "[t]his standard resembles the section 1983 . . . qualified immunity standard[,] . . . the District's argument fails for essentially the same reasons" as those set forth above with respect to its qualified immunity defense. District of Columbia v. Minor, 740 A.2d 523, 531 (D.C. 1999); see also Dingle v. District of Columbia, 571 F. Sup. 2d 87, 97 (D.D.C. 2008) (noting that "[a]ssessments of qualified immunity from constitutional torts and privilege from common-law

13

torts may be combined into a single analysis" and citing Minor, 740 A.2d 523, for the proposition that "a claim of common-law privilege necessarily fails if a claim of qualified immunity fails"). The jury was entitled to conclude, consistent with its verdicts, that Officer Robinson did not believe in good faith that his conduct was lawful, and this Court concludes, based on the evidence and the jury's findings—taking both in the light most favorable to Westfahl—that such a belief would not have been reasonable. Defendant Officer Robinson is thus not entitled to common law privilege for the assault and battery claims against him.

### C. Defendants' Remaining Arguments

Defendants raise three additional arguments. First, they contend that, although Officer Robinson was acting within the scope of his employment in exerting force against and arresting Westfahl, the District of Columbia is entitled to judgment as a matter of law for the assault and battery verdicts against it because Officer Robinson "is not liable for assault and battery" against Westfahl. Defs.' Mot. 13. Second, Defendants argue that, because Officer Robinson is entitled to qualified immunity and common law privilege, it would be clear error under Rule 59(e) for this Court not to grant Defendants judgment as a matter of law or to alter or amend the judgment in Defendants' favor. And third, Defendants maintain that "the weight of the evidence does not support the verdict against" them because the "MPD [v]ideotape shows the flagpole being violently swung in the direction of the officers," which is sufficient to constitute an assault whether or not the flagpole made contact with any officer. Id. at 14–15.

The District's first two arguments fail because they are dependent on a conclusion that Officer Robinson is entitled to qualified immunity and common law privilege, which the Court has rejected. And its third argument fails because, as explained previously, the MPD video

footage on which Defendants rely does not clearly show the flagpole being swung in the direction of the officers, let alone "violently" or by Westfahl.

## IV.     Conclusion

For the foregoing reasons, Defendants' Motion for Judgment as a Matter of Law and Motion to Alter or Amend the Judgment will be denied.  An Order accompanies this Memorandum Opinion.

 

CHRISTOPHER R. COOPER
United States District Judge

Date:   November 6, 2015