**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

| | |
|---|---|
| **SHAWN WESTFAHL**, | |
| Plaintiff, | |
| v. | Case No. 11-cv-02210 (CRC) |
| **DISTRICT OF COLUMBIA, <u>et al.</u>**, | |
| Defendants. | |

## <u>MEMORANDUM OPINION</u>

This case arrived in December 2011 with a bang: a multi-count civil-rights complaint accusing four District of Columbia police officers of assaulting and denying medical treatment to a World Bank protester merely for expressing his political views, and the District itself of encouraging the officers' misconduct by ignoring widespread use of excessive force by its police. It ended four-and-a-half years later with more than a whimper perhaps, but far less fanfare than was heralded by the Complaint. After the Court granted summary judgment for Defendants on most of the claims—including that alleging systemic deficiencies in the District's handling of police-misconduct complaints—a jury found one officer liable for overzealously securing Plaintiff Shawn Westfahl's otherwise-lawful arrest, and awarded him $10,000. The task now before the Court is to fashion an award of fees to Westfahl's attorneys that fairly accounts for the relative success of their endeavors. They seek roughly $368,000 in fees and $12,000 in costs. For the reasons explained below, the Court will award them $98,475.42 in fees and $6,418.57 in costs.

## I.      Background

The facts of the case are fully set forth in the Court's December 12, 2014 opinion granting summary judgment to Defendants on most of Westfahl's claims, see Westfahl v. Dist. of Columbia, 75 F. Supp. 3d 365 (D.D.C. 2014), and its November 4, 2015 opinion declining to upset the jury's partial verdict in Westfahl's favor, see Westfahl v. Dist. of Columbia, No. 11-cv-02210, 2015 WL 6746479 (D.D.C. Nov. 4, 2015).  They need not all be repeated here.  In short, Westfahl participated in a protest march against the World Bank and International Monetary Fund on October 9, 2010.  Later that night, members of a Metropolitan Police Department ("MPD") bike squad attempted to cordon a handful of residual protesters onto a sidewalk after they had become unruly.  Most of the marchers complied.  Westfahl, however, who was leading the way with a protest flag, tried to walk past the officers.  A brief scuffle broke out and Westfahl was arrested and charged with assaulting a police officer.  The officers claimed Westfahl hit one of them with his flagpole and resisted their efforts to detain him.  Westfahl denied resisting the officers' commands and insisted that they roughed him up for no good reason after he released the pole voluntarily.  Westfahl suffered only minor abrasions in the tussle.  While later in custody, however, he claimed to have suffered an asthma attack brought on because the police had confiscated his inhaler at the scene and refused to allow him to use it at the jail.

Westfahl filed suit in the District of Columbia Superior Court against four MPD officers and the District.  Defendants removed the case to this Court and Westfahl proceeded to twice amend his Complaint during a lengthy discovery period.  The Second Amended Complaint, filed in May 2013, contains ten counts, which coalesce around three distinct sets of factual allegations.  The first set involves the altercation and Westfahl's arrest.  These events gave rise to a First

2

Amendment free speech claim (Count I); a Fourth Amendment excessive force claim (Count II);

and common law claims for false arrest and false imprisonment (Count V), assault and battery

(Count VI), intentional infliction of emotional distress (Count VII), abuse of process (Count IX),

and defamation (Count X).  The second set of allegations surrounds the confiscation of

Westfahl's inhaler and his subsequent asthma episode.  Westfahl pursued a Fifth Amendment

Monell[1] claim (Count IV) and a negligence claim (Count VIII) against the District based on

those events.  The final set of allegations pertains to MPD's use of force generally and the

District's supposedly inadequate response to complaints of excessive force employed by MPD.

This was the basis for a second Monell claim against the District (Count III).

   As noted, in December 2014 the Court granted partial summary judgment in favor of

Defendants.  Specifically, it dismissed the First Amendment and Fourth Amendment claims and

the assault and battery claim as to some Defendants, and it dismissed the Monell and abuse of

process claims in their entirety.  Westfahl withdrew his claims of intentional infliction of

emotional distress and negligence, see Pl.'s Mem. Opp'n Defs.' Mot. Summ. J. 50; his

defamation claim as to two of the Defendants, id. 17 n.2; and his abuse of process claim as to one

of the Defendants, id. 23 n.3.

   Westfahl proceeded to trial against Officers Todd Cory and Robert Robinson, as well as

the District.  On July 31, 2015, the jury returned a verdict against Officer Robinson on

Westfahl's Fourth Amendment excessive force claim pursuant to 42 U.S.C. § 1983 and against

both Robinson and the District (based on respondeat superior liability) on his assault and battery

---

   [1] Monell v. Department of Social Services "held that 'a local government may not be
sued under § 1983 for an injury inflicted solely by its employees or agents.  Instead, it is when
execution of a government's policy or custom . . . inflicts the injury that the government as an
entity is responsible under § 1983.'"  Owen v. City of Independence, 445 U.S. 622, 633 (1980)
(quoting Monell, 436 U.S. 658, 694 (1978)).

claim. It found against Westfahl on all of his claims against Officer Cory. See Verdict Form,

ECF No. 120. The jury proceeded to award Westfahl $10,000 in damages. See id. The Court

upheld the verdict over the District and Robinson's objections. See Westfahl, 2015 WL

6746479.

Westfahl was represented by three lawyers over the course of the case. His lead attorney

throughout was Jeffrey L. Light, a 2004 law school graduate who works as a solo practitioner

specializing in civil rights litigation. Mr. Light received sporadic assistance over the course of

the litigation from Daniel E. Schultz, a 1966 law school graduate, who is a partner in a three-

lawyer firm and a veteran personal injury and medical malpractice lawyer. And at trial, Mr.

Light was joined by Tamara L. Miller, a 1985 law graduate and former Air Force and Justice

Department attorney. Ms. Miller is the managing partner of a three-lawyer medical-malpractice

and employment-law firm. Mr. Schultz and Ms. Miller each employed a paralegal to assist with

the case.

Westfahl has moved for attorneys' fees based on his successful § 1983 claim against

Officer Robinson. See 42 U.S.C. § 1988(b) (providing for the award of "a reasonable attorney's

fee," in the court's discretion, to a prevailing party in "any action or proceeding to enforce a

provision of [42 U.S.C. §] 1983"). In support of the motion, Mr. Light and his co-counsel have

submitted declarations attesting to their experience and billing practices along with billing

records setting forth the hours they worked on the case. Mr. Light submits that he billed a total

of 335.40 hours, but is seeking reimbursement for 302.70 hours, after eliminating time spent

inefficiently and on claims that he acknowledges were unrelated to those on which Westfahl

prevailed. See Decl. Jeffrey L. Light ("Light Decl.") 10. Mr. Schultz attests that he billed 21.40

hours, which he characterizes as a "very conservative" estimate of his time based on a

reconstruction of the activities he undertook.  See Decl. Daniel E. Schultz 3.  (As a contingency-fee lawyer, he claims not to keep contemporaneous billing records.  See id.)  He also attests that his paralegal billed 234.40 hours.  See id. at 9.  Finally, Ms. Miller's billing records reflect that she spent 71.45 hours and that her paralegal spent 53.40 hours on the case, for a total of 124.85 hours.[2]  See Decl. Tamara L. Miller ("Miller Decl.") 7–9.

Westfahl urges the Court to calculate the lodestar fee award by multiplying the number of hours that each of his lawyers spent on the case by a billing rate taken from the "LSI-adjusted Laffey matrix," Citizens for Responsibility & Ethics in Wash. v. U.S. Dep't of Justice ("CREW"), 80 F. Supp. 3d 1, 3 (D.D.C. 2015)—a version of the rate table that judges in this district frequently use to determine prevailing hourly rates for "complex federal litigation" services, as adjusted for inflation using an index for prices of legal services nationwide, see Eley v. Dist. of Columbia, 793 F.3d 97, 104 (D.C. Cir. 2015) (quoting Covington v. Dist. of Columbia, 57 F.3d 1101, 1110 (D.C. Cir. 1995)).  Defendant Robinson counters that the Court should apply billing rates from the 2015-2016 version of the Laffey matrix maintained by the U.S. Attorney's Office for the District of Columbia, which uses a different inflation adjustment factor from that of the LSI-adjusted matrix.

## II.    Legal Standard

In 1976, Congress authorized "the district courts to award a reasonable attorney's fee to prevailing parties in civil rights litigation."  Hensley v. Eckerhart, 461 U.S. 424, 429 (1983) (citing Civil Rights Attorney's Fees Awards Act of 1976, amending 42 U.S.C. § 1988).  "The

---

[2] In his motion, Westfahl states that Ms. Miller billed a total of 124.85 hours to the case. See Mot. Att'ys' Fees & Costs 12.  Ms. Miller's billing records, however, indicate that 53.40 of those hours were actually billed by her paralegal.  See Miller Decl. 7-9.  The Court will therefore credit Ms. Miller with 71.45 hours.

purpose of § 1988 is to ensure 'effective access to the judicial process' for persons with civil

rights grievances." Id. (quoting H.R. Rep. No. 94-1558, at 1 (1976)).  District courts are

instructed to determine the amount of the award based "on the facts of each case." Id.  Where, as

here, a plaintiff prevails on only some of his claims, the Court must allocate fees based on the

relative degree of the plaintiff's success.  Hensley "provided for a two-step inquiry" to guide this

determination:  "First, did the plaintiff fail to prevail on claims that were unrelated to the claims

on which he succeeded?  Second, did the plaintiff achieve a level of success that makes the hours

reasonably expended a satisfactory basis for making a fee award?"  George Hyman Constr. Co.

v. Brooks, 963 F.2d 1532, 1535 (D.C. Cir. 1992) (quoting Sierra Club v. EPA, 769 F.2d 796, 801

(D.C. Cir. 1985)) (citing Hensley, 461 U.S. at 434).

        The first inquiry "requires a trial court . . . to conduct an examination of the hours counsel

expended on each claim in the case, weeding out work done on unrelated unsuccessful claims

from any award" because "a plaintiff should not be able to force his opponent to pay for the legal

services involved in bringing groundless claims simply because those unsuccessful claims were

brought in a lawsuit that included successful claims." Id. (quoting Sierra Club, 769 F.2d at 801)

(internal quotation marks omitted).  The court must then consider, under the second inquiry,

"whether the success obtained on the remaining claims is proportional to the efforts expended by

counsel," bearing in mind that, "[w]hen a party achieves 'only partial or limited success,' . . .

compensation for all of the 'hours reasonably expended on the litigation as a whole . . . may be

an excessive amount.'"  Id. (second omission in original) (quoting Hensley, 461 U.S. at 436).

        Prior to assessing the plaintiff's level of success and whether that success is proportional

to the fees claimed by her attorney, however, the "most useful starting point for determining the

amount of a reasonable fee," Hensley, 461 U.S. at 433, is the "lodestar figure, which is the

number of hours reasonably expended multiplied by a reasonable hourly rate," Murray v. Weinberger, 741 F.2d 1423, 1427 (D.C. Cir. 1984).  The Court thus begins its analysis by determining that figure.

### III.    Analysis

#### A.    Step 1:  Calculating the Lodestar

##### 1.    Hours Billed

Based on its review of the billing records submitted by each of the lawyers in the case, the Court finds the overall number of hours billed—before accounting for unsuccessful claims— to be reasonable for the tasks undertaken.  While some of the work descriptions in Mr. Light's and Ms. Miller's billing records are less specific than would be ideal, the overall level of detail is, by and large, sufficient for the Court to determine what tasks the attorneys (and Ms. Miller's paralegal) performed.  Mr. Schultz's billing records are somewhat sketchy in this regard.  He has had to reconstruct the time he spent on the case because he is not in the practice of recording his hours contemporaneously.  Ordinarily, "[c]asual after-the-fact estimates of time expended on a case are insufficient to support an award of attorneys' fees.  Attorneys who anticipate making a fee application must maintain contemporaneous, complete and standardized time records which accurately reflect the work done by each attorney."  Nat'l Ass'n of Concerned Veterans v. Sec'y of Def., 675 F.2d 1319, 1327 (D.C. Cir. 1982).   Yet Defendant Robinson offers no wholesale objection to Mr. Schultz's time entries on that basis.  He urges the Court instead to reduce Mr. Schultz's hours mainly to account for his work on unsuccessful claims—a position that the Court will tackle at the second step of its analysis.  Hearing no objection, and seeing no other reason to question the rather modest 21.40 hours that Mr. Schultz reports having devoted to the case, the Court will accept his post-hoc estimate.  As for Mr. Schultz's paralegal, Ryan Andrews, the

Defendant has appropriately challenged certain of his time entries as vague.  Mr. Schultz has responded with a supplemental declaration adding additional detail with respect to those entries.  This additional information is adequate to document what tasks Mr. Andrews performed.

The Court also finds that the tasks performed by the lawyers were appropriate for the litigation.  While the case was vigorously litigated on both sides, the Court discerns no instances of unrelated or duplicative work, unnecessary pleadings, manufactured disputes, or presentation of spurious arguments.  Cf. Hensley, 461 U.S. at 434 ("Counsel for the prevailing party should make a good faith effort to exclude from a fee request hours that are excessive, redundant, or otherwise unnecessary . . . .").  Finally, the Court is satisfied that the time devoted by each attorney and paralegal to the tasks performed was reasonable.  If anything, the hours billed in some areas strike the Court as low.  (Mr. Light, for example, billed a total of 20.30 for his work on the summary judgment briefs, which covered a considerable amount of factual detail and numerous legal issues.  See Light Decl. 9 (entries dated 6/16/2014 through 9/25/2014).)  Accordingly, the Court will use the hours offered by Westfahl's attorneys as the starting point for its calculations.

## 2.  Billing Rates

Having arrived at the baseline number of hours, the Court must apply a billing rate.  As noted above, Westfahl's attorneys seek LSI-Laffey rates.  Defendant Robinson urges the Court to instead apply rates set forth in 2015-2016 version of the USAO Laffey matrix.  This Court has previously found the LSI-adjusted Laffey matrix to offer a better inflation-indexing methodology than *prior* versions of the USAO matrix because it relies on an index pegged to prices of legal services rather than those of consumer goods and services generally.  See CREW, 80 F. Supp. 3d at 3.  But the 2015-2016 USAO matrix professes to differ from prior versions in two respects.

8

First, responding to the indexing deficiencies noted by this and other courts in this district, the new matrix jettisons the regional Consumer Price Index for All Urban Consumers in favor of the Producer Price Index–Office of Lawyers ("PPI-OL") index, which is said to measure the price of services offered by law offices across the country.  See Mem. Opp'n Mot. Att'ys' Fees & Costs Ex. 1 ("USAO Attorney's Fees Matrix – 2015-2016") 1–2.  The USAO contends that this change should "eliminate disputes about whether the inflator is sufficient."  Id. at 2 (Explanatory Note 3).  Second, according to the USAO, the new matrix has been created using a more recent survey of actual law firm billing rates published in the American Lawyer Magazine Legal Intelligence's 2010 & 2011 Survey of Law Firm Economics.  See id. at 1 (Explanatory Note 2).  The upshots of the two methodological changes are greater differentiation among levels of experience and fees for lawyers in selected experience bands that appear slightly higher than those in the prior USAO matrix but considerably lower than LSI-Laffey fees.[3]

The new USAO matrix may well offer a preferable approach.  As Westfahl observes, however, Defendant Robinson has not provided the Court with any evidentiary basis to reach that conclusion.  He has submitted a copy of the new matrix, which contains the USAO's own commentary, but offers no affidavits, expert opinions, or judicial findings comparing its new methodology with that of the LSI-adjusted matrix.  Absent such a showing, the Court is in no position to assess the relative merits of the two matrices.  The Court will therefore, in this case at

---

[3] For example, the LSI-Laffey matrix sets the hourly rate for attorneys with 11-19 years of experience at $655 for 2014-2015, see Laffey Matrix, http://www.laffeymatrix.com/see.html (last visited April 22, 2016), and the previous USAO Laffey matrix set the rate for the same level of experience at $460, see Laffey Matrix – 2014-2015, https://www.justice.gov/sites/default /files/usao-dc/legacy/2014/07/14/Laffey%20Matrix_2014-2015.pdf (last visited April 22, 2016). The new USAO Laffey matrix, however, sets the hourly rates for attorneys with 11-15 years of experience at $455 and those with 16-20 years of experience at $504.  See USAO Attorney's Fees Matrix – 2015-2016, at 1.

least, apply LSI-Laffey rates, reduced by a factor of 15% to reflect the realities of rate discounting and billing realization that are not taken into account by published standard attorney billing rates.  See CREW, 801 F. Supp. 3d at 5 (explaining reasons for 15% reduction).

Beginning with Mr. Light, the Court will apply the current LSI-Laffey rates that correspond to Mr. Light's historical levels of experience during the life of this case.  See Williams v. Johnson, No. 06-2076, 2016 WL 1257831, at *3 (D.D.C. Mar. 30, 2016) (describing as "sensible" the D.C. Court of Appeals's prior conclusion that use of the "current hourly rates as applied to historical levels of experience" is appropriate "because an attorney is deprived of the fees during the pendency of the litigation" and the "current Laffey rates properly account[] for the impact of inflation on the fees earned").  The following table lays out the lodestar totals for three periods of time, each corresponding to a different band of experience applicable to Mr. Light during his work on the case, as a function of the current LSI-Laffey rates covering June 1, 2015 through May 31, 2016, reduced by 15%, and then multiplied by the hours claimed.  These calculations result in a lodestar figure of $153,304.47 for Mr. Light's work on the case.  See Mot. Att'ys' Fees & Costs Ex. 1 ("Laffey Matrix").

| Years Hours Claimed | Experience Band | Applicable 2015-2016 LSI-Laffey Rate | Applicable 2015-2016 LSI-Laffey Rate, reduced by 15% | Claimed Hours | Lodestar |
|---|---|---|---|---|---|
| 6/1/2010 – 5/31/2011; 6/1/2011 – 5/31/2012 | 4-7 years | $406 | $345.10 | 29.30 | $10,111.43 |
| 6/1/2012 – 5/31/2013; 6/1/2013 – 5/31/2014; 6/1/2014 – 5/31/2015 | 8-10 years | $586 | $498.10 | 163.40 | $81,389.54 |
| 6/1/2015 – 5/31/2016 | 11-19 years | $661 | $561.85 | 110.0 | $61,803.50 |
| | | | *Total* | *302.70* | *$153,304.47* |

As for Mr. Schultz and Ms. Miller, each has over twenty years of practice experience, placing them in the "20+" experience band of the LSI-Laffey matrix. See id. Applying the current rate for that experience band, the Court will calculate their lodestar amounts based on a rate of $796 per hour, reduced by 15%, or $676.60. The current LSI-Laffey rate for their paralegals is $180 per hour. Id. Reduced by 15%, the rate the Court will apply is $153.00 per hour. At these rates, the lodestar figure for Mr. Schultz and his paralegal is $50,342.44, and the figure for Ms. Miller and her paralegal is $56,513.27. Adding Mr. Light's figure, the total lodestar comes to $260,160.18.

### B.      Step 2:  Consideration of Unsuccessful Claims

As noted above, Westfahl's various claims revolve around three largely distinct sets of facts: first, his confrontation with the police and subsequent arrest; second, MPD's confiscation of his asthma inhaler at the police station following his arrest and the conditions of his subsequent detention; and third, MPD's use of force generally and the District government's response to citizens' complaints of excessive force employed by MPD. The two claims upon which Westfahl partially prevailed—use of excessive force in violation of the Fourth Amendment and assault and battery against Officer Robinson and the District of Columbia— arise only from the first set of facts. Westfahl concedes that the claims regarding his asthma attack are unrelated to those based on the altercation. He argues, however, that his Monell claim against the District based on its use-of-force investigation policies was sufficiently intertwined with his successful claims that his work on the former was necessary for his victory on the latter. He therefore asks that the Court's fee award include time his lawyer spent on that claim, notwithstanding its dismissal. See Hensley, 461 U.S. at 440 ("Where a lawsuit consists of

related claims, a plaintiff who has won substantial relief should not have his attorney's fee reduced simply because the district court did not adopt each contention raised.").

The Court finds that Westfahl's <u>Monell</u> claim against the District is not related to his excessive force and assault claims against Officer Robinson. "[C]laims are interrelated if they are based on the same facts or legal theories." <u>George Hyman Constr.</u>, 963 F.2d at 372. These two sets of claims are based on neither. As noted, the factual allegations supporting Westfahl's <u>Monell</u> claim center on the District's purported failure to investigate use-of-force complaints and discipline officers involved in misconduct. This failure, according the Complaint, caused the officers to act with deliberate indifference to Westfahl's Fourth Amendment rights on the night in question. By contrast, the factual allegations supporting Westfahl's claims against Officer Robinson focused on the latter's role in the scuffle that preceded the arrest. The legal theory, obviously, was that Robinson's use of force was excessive. Whatever role the District's policies may have had in causing Robinson's actions was irrelevant to the claim. The Court thus rejects Westfahl's contention that litigation of the <u>Monell</u> claim was necessary to prevail on his excessive force claims. The Court will therefore reduce the fee award based on the time Westfahl's lawyers devoted to the <u>Monell</u> claim.

With that behind it, the Court must decide *how* to go about making the reduction. Two options are available. It could pour over the attorneys' billing entries line-by-line and eliminate any that clearly relate to the <u>Monell</u> claim. Or, it could simply reduce the hours by a percentage factor based on a reasonably informed estimate of the relative time spent on each set of claims. See <u>Hensley</u>, 461 U.S. at 436–37 ("There is no precise rule or formula for making these determinations. The district court may attempt to identify specific hours that should be

eliminated, or it may simply reduce the award to account for the limited success."). The Court

will take the latter approach.

In making this across-the-board reduction, it is helpful to divide this case into two phases:

pre– and post–summary judgment. Review of the billing records indicates that, prior to

summary judgment, when the Monell claim was still part of the case, it occupied the bulk of the

attorneys' time and attention. For example, of the 148 paragraphs of factual allegations in the

Second Amended Complaint, fully 120 relate solely to Westfahl's pattern-and-practice

allegations. As Defendant Robinson notes, Westfahl's attorneys deposed at least six witnesses

concerning the Monell claim, see Def.'s Opp'n Ex. 8, at ¶¶ 28–32 (out of thirteen total witnesses

deposed, see Light Decl. 7–10), none of whom had personal knowledge of the events

surrounding the altercation and Westfahl's arrest. And nearly half of Westfahl's brief in

opposition to Defendants' motion for summary judgment was devoted to the Monell claim. See

Pl.'s Opp'n Defs.' Mot. Summ. J. 25–47. Finally, many of the disputes that arose during

discovery appear to have related to the Monell claim. Based on these observations, the Court

will reduce by 75% the time Westfahl's attorneys spent on the case up through summary

judgment, or December 12, 2014, the date the Court's summary judgment opinion issued.

After summary judgment and through trial, the remaining claims in the case all centered

on the altercation between Westfahl and the police. Defendant Robinson urges the Court to

substantially reduce the fee award to reflect the fact that Westfahl did not ultimately prevail on

some of these claims, and prevailed only against him on others. As noted above, however, the

test for interrelated claims is whether they are based on common facts or legal theories. The

claims that survived summary judgment were, for the most part, based on the same set of factual

allegations as those on which Westfahl prevailed. One outlier is Westfahl's unsuccessful First

Amendment claim, which principally relied on Officer Cory's notation in a police report that

Westfahl had engaged in a "hate crime" due to the hostile content of the chants that the

protestors directed toward the police.  The relevant facts and legal theories surrounding that

claim are unrelated to Officer Robinson's role in the altercation.  Taking all of this into account,

the Court will reduce the attorney and paralegal hours spent on the case post–summary judgment

by 15%.

        C.      <u>Step 3:  Consideration of the Reasonableness of the Fee in Light of Overall Success</u>

The Supreme Court has instructed that "even where the plaintiff's claims were

interrelated, nonfrivolous, and raised in good faith"—as was the case here—a fee award may be

"excessive" if it does not reflect the overall "degree of success obtained" in the litigation.

<u>Hensley</u>, 461 U.S. at 436.  Especially in civil rights cases, where "the plaintiff often may succeed

in identifying some unlawful practices and conditions, the range of possible success is vast."  <u>Id.</u>

"There is no precise rule or formula" for determining whether a fee award is in line with the

success achieved.  <u>Id.</u>  It is left to the district court to exercise "discretion in making this

equitable judgment."  <u>Id.</u> at 437.

The result in this case no doubt provided some measure of vindication and compensation

for Westfahl.  It was not, however, the blockbuster civil rights victory contemplated by the

Complaint.  Counsel's efforts failed to expose the type of glaring deficiencies in the District's

handling of excessive force complaints that would support municipal liability for the plaintiff's

treatment.  And while the jury verdict was legally sound, the case did not result in a finding of

clear-cut police misconduct under either the Fourth or First Amendment.  The precise series of

events during the brief tussle that caused Westfahl's minor injuries remains murky, and the jury

did not accept the argument that Westfahl was targeted because of his political views.  Moreover, Westfahl prevailed against just one of the four officers originally named in the Complaint.

With these considerations in mind and taking into account the reduction that has already been made for unrelated claims, the Court finds that a further 30% reduction of fees is appropriate to account for the limited success of the litigation.  As will be discussed further below, the Court will take a similar approach to Westfahl's claim for costs.

### D.       Step 4:  Final Calculations

Taking these reductions together, the Court arrives at the ultimate fees award of $98,475.42.  According to the billing records, Mr. Light claimed 183.80 hours of work on the case up through summary judgment and 118.90 hours following the summary-judgment stage and through trial.  Those two time periods each span two of Mr. Light's Laffey bands of experience.  From the Complaint through summary judgment, Mr. Light claimed 29.30 hours at an experience level of 4-7 years and 154.50 hours at an experience level of 8-10 years, or 183.80 total.  Post–summary judgment through trial, Mr. Light claimed 8.90 hours at the 8-10 years' level and 110.0 hours at the 11-19 years' level, or 118.90 total.  The chart that follows shows Mr. Light's lodestar figure broken down by both litigation stage—marked by the date of the Court's summary judgment opinion, December 12, 2014—and experience band.

| Litigation Stage | Years Hours Claimed | Experience Band | Applicable 2015-2016 LSI-Laffey Rate, reduced by 15% | Claimed Hours | Lodestar |
|---|---|---|---|---|---|
| Complaint through summary judgment | 6/1/2010 – 5/31/2011; 6/1/2011 – 5/31/2012 | 4-7 years | $345.10 | 29.3 | $10,111.43 |
| | 6/1/2012 – 5/31/2013; 6/1/2013 – 5/31/2014; 6/1/2014 – 12/12/2014 | 8-10 years | $498.10 | 154.5 | $76,956.45 |
| *Total:  Complaint through summary judgment* | | | | *183.8* | *$87,067.88* |
| Post–summary judgment through trial | 12/13/2014 – 5/31/2015 | 8-10 years | $498.10 | 8.9 | $4,433.09 |
| | 6/1/2015 – 5/31/2016 | 11-19 years | $561.85 | 110.0 | $61,803.50 |
| *Total:  Post–summary judgment through trial* | | | | *118.9* | *$66,236.59* |
| *Grand Total* | | | | *302.7* | *$153,304.47* |

Applying the reductions discussed above, the $87,067.88 lodestar figure for the first litigation stage will be reduced by 75%, and the $66,236.59 lodestar figure for the second litigation stage will be reduced by 15%.  After those two reductions, the Court will apply a further 30% reduction for overall success, resulting in a total award of $54,647.65 to Mr. Light.

Of the 21.40 hours Mr. Schultz claimed, he billed 16.50 to the Complaint-through-summary-judgment stage and 4.90 to the post-summary-judgment stage.  His paralegal, Mr. Andrews, billed all of his 234.40 hours to the former stage.  With the applicable 75%, 15%, and 30% reductions, the Court will award Mr. Schultz and Mr. Andrews a total of $10,202.37.  Ms. Miller and her paralegal billed all of their 124.85 hours to the post-summary-judgment stage. With the applicable 15% and 30% reductions, the Court will award them $33,625.40.

16

In support of Westfahl's claim for costs, Mr. Light identifies $11,770.26 in costs covering expenses such as witness travel and deposition transcripts.  Mot. Att'ys' Fees & Costs Ex. 24.  The Court will omit from the total those costs clearly associated with Westfahl's <u>Monell</u> claim—namely, transcripts for the depositions of witnesses for that claim.  The Court will then reduce the resulting total by 30% to reflect Westfahl's overall success, yielding a total costs award of $6,418.57.

## IV.    Conclusion

For the foregoing reasons, the Court will grant in part and deny in part Westfahl's motion for attorneys' fees and costs.  An order accompanies this memorandum opinion.

CHRISTOPHER R. COOPER
United States District Judge

Date:    April 22, 2016